# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

### CASE Nos. 20-3694

### TRISHA DORAN, M.D.,
### Plaintiff-Appellant,

### -vs-

### ROBERT WILKIE, ADMINISTRATOR, UNITED STATES DEPARTMENT OF VETERANS AFFAIRS
### Defendant-Appellee.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION CASE No. 2:16-CV-665

## BRIEF OF PLAINTIFF-APPELLANT, TRISHA DORAN, M.D.

Paul W. Flowers, Esq. (#0046625)
Louis E. Grube, Esq. (#0091337)
**PAUL W. FLOWERS CO., L.P.A.**
50 Public Square, 40th Floor
Cleveland, Ohio 44113
(216) 344-9393
pwf@pwfco.com
leg@pwfco.com

*Attorneys for Plaintiff-Appellant, Trisha Doran*

Leah M. Wolfe, Esq. (#0093299)
Assistant United States Attorney
303 Marconi Blvd., Suite 200
Columbus, Ohio 43215
(614) 469-5715
leah.wolfe@usdoj.gov

*Attorney for Defendant-Appellee, Robert Wilkie, Administrator, United States Department of Veterans Affairs*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 20-3694      Case Name: Doran v. Wilkie

Name of counsel: Paul W. Flowers, Esq. and Louis E. Grube, Esq.

Pursuant to 6th Cir. R. 26.1, Trisha Doran, M.D.
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No

## CERTIFICATE OF SERVICE

I certify that on _____ February 18, 2021 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Paul W. Flowers, Esq.

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a) **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b) **Financial Interest to Be Disclosed**.

(1) Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c) **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# TABLE OF CONTENTS

CORPORATE DISCLOSURES ...................................................................ii

TABLE OF CONTENTS ...............................................................................iv

TABLE OF AUTHORITIES .........................................................................vi

POSITION ON ORAL ARGUMENT..........................................................1

JURISDICTIONAL STATEMENT..............................................................1

    A.   DISTRICT COURT ........................................................ 1
    B.   COURT OF APPEALS ................................................... 1
    C.   TIMELINESS OF APPEAL............................................ 1
    D.   FINALITY OF ORDER ................................................. 1

STATEMENT OF THE ISSUES.................................................................2

STATEMENT OF THE CASE AND FACTS ..........................................2

    I.   THE COLUMBUS VA GASTROENTEROLOGY DEPARTMENT ................................................................ 2

    II.   THE DETERIORATING WORKING CONDITIONS.....................4

    III.  THE VA TERMINATION AND ADMINISTRATIVE REVIEW ........................................................................ 8

    IV.  THE LEGAL PROCEEDINGS ......................................11

    V.   THE FINAL MEDICAL BOARD DECISION ...............14

    VI.  THE SECOND APPEAL .............................................16

SUMMARY OF ARGUMENT .......................................................................17

ARGUMENT .....................................................................................................18

    I.   STANDARD OF REVIEW ...........................................18

        A.   District Court.............................................. 18

        B.   Appellate Court ...........................................19

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

II. THE PROPERLY ESTABLISHED CLAIM OF SEX
DISCRIMINATION .......................................................................20

    A.   The Shifting Burdens of Proof ..............................................20

    B.   The *Prima Facie* Case of Gender Discrimination ................ 21

    C.   The Pretext for Discrimination ............................................24

III. THE RETALIATION CLAIM ......................................................28

    A.   The *Prima Facie* Case of Retaliation ....................................28

    B.   The Plaintiff's Retaliation Positions .....................................29

CONCLUSION ...................................................................................33

CERTIFICATE OF COMPLIANCE...................................................34

CERTIFICATE OF SERVICE.............................................................34

ADDENDUM DESIGNATION OF DISTRICT COURT RECORDS...........35

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40ᵗʰ Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ........................... 19

*Brannam v. Huntington Mtge. Co.,*
  287 F.3d 601 (6th Cir. 2002) .................................................... 19

*Brotherhood of Teamsters v. United States,*
  431 U.S. 324, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977) ............................ 22

*Bryant v. Carleson,*
  444 F.2d 353 (9th Cir. 1971) .................................................... 14

*Burrus v. United Tel. Co. of Kansas,*
  683 F.2d 339 (10th Cir. 1982) ................................................... 29

*Celotex Corp. v. Catrett,*
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ........................... 19

*Chrisner v. Complete Auto Transit, Inc.,*
  645 F.2d 1251 (6th Cir. 1981) ................................................... 21

*Cohen v. Fred Meyer, Inc.,*
  686 F.2d 793 (9th Cir. 1982) .................................................... 29

*Colvin v. Veterans Admin. Med. Ctr.,*
  390 F. App'x 454 (6th Cir. 2010) ...........................................14, 25

*CSX Transp. Inc. v. Garden City,*
  235 F.3d 1325 (11th Cir. 2000) .................................................. 14

*DePiero vs. Macedonia,*
  180 F.3d 770 (6th Cir. 1999) .................................................... 19

*Doran v. Wilkie,*
  768 F. App'x 340 (6th Cir. 2019) .....................................11, 12, 26, 27

*Equal Emp. Opportunities Comm. v. Ball Corp.,*
  661 F.2d 531 (6th Cir. 1981) .................................................... 22

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

*Grano v. Dept. of Dev. of City of Columbus*,
    637 F.2d 1073 ..................................................................... 22

*Grant v. Bethlehem Steel Corp.*,
    622 F.2d 43 (2d Cir. 1980)........................................................ 29

*Griffin v. Finkbeiner*,
    689 F.3d 584 (6th Cir. 2012) ................................................... 22

*Hall v. Ledex, Inc.*,
    669 F.2d 397 (6th Cir. 1982) ............................................. 21, 22

*Hamilton v. Gen. Elec. Co.*,
    556 F.3d 428 (6th Cir. 2009).................................................... 25

*Hance v. Norfolk S. Ry. Co.*,
    571 F.3d 511 (6th Cir. 2009) ................................................... 27

*Hodgson v. Farmington City*,
    675 F. App'x 838 (10th Cir. 2017)............................................ 14

*International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and
    Helpers of Am. v. Zantop Air Transp. Corp.*,
    394 F.2d 36 (6th Cir. 1968) ...................................14, 15, 16, 25

*Kitchen v. Chippewa Valley Schools*,
    825 F.2d 1004 (6th Cir. 1987) ................................................. 21

*Leitgen v. Franciscan Sekmp Healthcare, Inc.*,
    630 F.3d 668 (7th Cir., 2011).............................................32, 33

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)............................ 21, 29

*Molloy v. Blanchard*,
    115 F.3d 86 (1st Cir. 1997)....................................................... 22

*Natl. Bank of Detroit v. Shelden*,
    730 F.2d 421 (6th Cir. 1984)................................................... 19

*Palmer v. Shultz*,
    815 F.2d 84 (D.C. Cir. 1987) .................................................. 22

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

*Potter v. Synerlink Corp.*,
  562 F. App'x. 665 (10th Cir. 2014)............................................................. 25

*Reed v. S. Bend Nights, Inc.*,
  128 F. Supp. 3d 996 (E.D. Mich. 2015) ..................................................... 21

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ......................... 19

*Ricketts v. Attorney Gen. of United States*,
  800 F. App'x 66 (3d Cir. 2020) .................................................................. 14

*Rimedio v. Revlon, Inc.*,
  528 F. Supp. 1380 (S.D. Ohio 1982) .......................................................... 21

*Sones-Morgan v. Hertz Corp.*,
  725 F.2d 1070 (6th Cir. 1984)..................................................................... 19

*Summers v. Leis*,
  368 F.3d 881 (6th Cir. 2004)....................................................................... 19

*Texas Dept. of Community Affairs v. Burdine*,
  450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)....................... 21, 22

*United States v. Diebold, Inc.*,
  369 U.S. 654, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) .................................. 19

*Womack v. Munson*,
  619 F.2d 1292 (8th Cir. 1980)..................................................................... 29

*Wrenn v. Gould*,
  808 F.2d 493 (6th Cir. 1987) ...................................................................... 29

*Wright v. Autozone Stores, Inc.*,
  951 F. Supp. 2d 973 (W.D. Mich. 2013)................................................. 25, 26

*Wright v. Murray Guard, Inc.*,
  455 F.3d 702 (6th Cir. 2006)............................................................. 22, 23, 24

**Statutes**

28 U.S.C. § 1291 ..............................................................................................1

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

28 U.S.C. § 1331 ....................................................................................1

38 U.S.C. § 7461 ...................................................................................8

38 U.S.C. § 7462 ................................................................................ 26

42 U.S.C. § 2000e ............................................................................1, 2

42 U.S.C. § 2000e-3 .......................................................................... 29

42 U.S.C. § 2000e-16.......................................................................... 21

## Rules

Fed. R. App. P. 32 .............................................................................. 35

Fed. R. App. P. 34 ................................................................................1

Fed. R. Civ. P. 56(c) ........................................................................... 18

## Secondary Sources

9A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2529 (2d Ed. 1995) ..................................................................................... 19

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40ᵗʰ Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

# POSITION ON ORAL ARGUMENT

Plaintiff-Appellant, Trisha Doran, M.D., requests that this Court hold oral argument in this appeal. *See Fed. R. App. P. 34(a)(2).*

# JURISDICTIONAL STATEMENT

## A. DISTRICT COURT

There was no dispute in the proceedings below that federal jurisdiction had been properly established under 28 U.S.C. § 1331 (Federal Question). Plaintiffs' Complaint raised claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*

## B. COURT OF APPEALS

This Court possesses appellate jurisdiction over this controversy under authority of 28 U.S.C. § 1291.

## C. TIMELINESS OF APPEAL

Plaintiff-Appellant's appeal of the District Court's Final Judgement of May 29, 2020 (R. 71, PageID#:2116) was timely commenced on June 29, 2020 (Notice of Appeal, R. 72, PageID#:2117).

## D. FINALITY OF THE ORDERS

The District Court's Final Judgment of May 29, 2020, resolved all claims and was thus appealable pursuant to 28 U.S.C. § 1291.

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

## STATEMENT OF THE ISSUES

1. Was Plaintiff-Appellant a member of a class protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*?

2. Did Plaintiff-Appellant suffer an adverse employment action when she was terminated from her position as a physician with Defendant-Appellee?

3. Could reasonable jurors conclude from the evidentiary record established below that non-protected employees received better treatment from Defendant-Appellee than Plaintiff-Appellant?

4. Once Plaintiff-Appellant's *prima facie* case for discrimination and retaliation was established, did triable issues of fact exist over whether a legitimate non-discriminatory justification existed for the termination of Plaintiff's employment?

5. Did the District Court err, as a matter of law, by granting summary judgment in favor of Defendant-Appellee?

## STATEMENT OF THE CASE AND FACTS

## I.    THE COLUMBUS VA GASTROENTEROLOGY DEPARTMENT

Plaintiff-Appellant, Trisha Doran, M.D. is a physician licensed in Ohio and board certified in gastroenterology.  *Deposition of Trisha Doran, M.D. ("Doran Depo."), R. 64, PageID#:1681-82.*  After she completed medical school, a medical residency, and a gastroenterology fellowship at The Ohio

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

State University, she was hired by the Department of Veteran affairs ("V.A.") to work full time at the Chalmers P. Wiley VA Ambulatory Care Center in Columbus, Ohio. *Id., PageID#:1673-85.* The first seven years of her tenure were unblemished, and she continually received an "outstanding" grade in her annual proficiency reports. *Defendant's Exhibit E, Proficiency Reports 2008 through 2014, R. 38-5, PageID#:414-444.* Her direct supervisor in particular, Chief of Gastroenterology Glen Borchers, M.D. ("Dr. Borchers"), regularly praised her competency and professionalism in his own evaluations in 2012 and 2013. *Id., PageID#:420-421, 429-430.*

Dr. Borchers had accepted a Gastroenterology position in 2004 at the Columbus VA so that he would not have to work during the weekends. *Deposition of Glen Borchers, M.D. ("Borchers Depo."), R. 63, PageID#:1469.* In approximately 2010, he was promoted to Chief of the Department. *Id., PageID#:1479.*

Plaintiff's workload began to steadily increase heading into 2014. *Doran Depo., R. 64, PageID#:1743-1744.* During the period of October 1, 2013, through September 30, 2014, Plaintiff Dr. Doran had performed 3,223 outpatient procedures, clinic appointments, and other patient interactions, which was substantially higher than any of the other four Gastroenterologists in the Department. *Plaintiff's Exhibit M, R. 68-1, PageID#:2090.* Dr. Borchers completed only 2,230, which put him in second to last place. *Id.*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

## II.    THE DETERIORATING WORKING CONDITIONS

While she was being recruited by the Columbus VA, Plaintiff Dr. Doran was advised of the Educational Debt Reduction Program ("EDRP") that is available for Department employees. *Doran Depo., R. 64, PageID#:1696-1698.* The Chief of Staff, Marc Cooperman, M.D. ("Dr. Cooperman") led her to believe she would have no problem qualifying for the benefit. *Id., PageID#:1697.* Plaintiff eventually realized that she was not enrolled in the program, and she began making inquiries. *Id., PageID#:1696-1700.* Eventually in 2014 she learned that a male physician who had transferred from another VA Hospital to Columbus, Satish Maryala, M.D. ("Dr. Maryala") was receiving the debt reduction payments. *Id., PageID#:1705-1708.* Plaintiff began complaining to Dr. Cooperman, the Human Resources Department, and others that she was not being allowed to enter the EDRP despite providing all the necessary information and forms. *Id., PageID#:1707-1708.* In her view, the men were getting the bonus benefits "right away," but she was not. *Id., PageID#:1705-1706.*

At this point in 2014, and after he finished his probationary period as a supervisor, Dr. Borchers grew highly critical of Plaintiff and routinely questioned her competency. *Doran Depo., R. 64, PageID#:1714-1715.* She felt that he "treated [her] different than he treated the men." *Id., PageID#:1715.* He maintained a "boys club" in which she did not belong. *Id.*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

On January 26, 2015, Plaintiff Dr. Doran began an endoscopy for a 53-year-old male patient identified anonymously as "Patient A," who she had seen previously for a consult. *Doran Depo., R. 64, PageID#:1770-1771*. In order to sedate him, she titrated (administered slowly as needed) 100 micrograms of Fentanyl along with 2 milligrams of Versed. *Id., PageID#:1773, 1790-1794*. Both dosages were within the VA policy limits. *Id., PageID#:1726, 1793-1794; Defendant's Exhibit S, R. 57-19, PageID#:1303*. As Plaintiff was in the midst of the procedure, Patient A's chest went rigid, and his oxygen levels slowly dropped. *Doran Depo., R. 64, PageID#:1773-1774*. According to Plaintiff, she immediately instructed Janet Gerkin, R.N. ("Nurse Gerkin") to administer Narcan and Flumazenil, which are sedation reversal agents. *Id., PageID#:1775*. Had Nurse Gerkin immediately complied, the patient would have been awake within moments and able to leave the clinic that day. *Id., PageID#:1774-1776*. But a short time later Plaintiff saw the nurse off in the corner of the room calling for an anesthesiologist to place an airway. *Id., PageID#:1775-1776*. Nurse Gerkin would later claim that she did not hear the order for Narcan, although she did begin to retrieve the Flumazenil once she was off the phone. *Defendant's Exhibit GG, R. 57-33, PageID#:1374; Doran Depo., R. 64, PageID#:1775-1778, 1786-1787*. The confusion amongst the staff was evident, as Bonnie Herrington R.N. maintained she heard an order for Atropine but not Narcan. *Defendant's Exhibit GG, R. 57-33, PageID#:1375*. The reversal agents were

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

locked away, however, in the Pyxis MedStation in violation of standard protocol. *Doran Depo., R. 64, PageID#:1777-1778.* Lisa Carr, R.N. ("Nurse Carr") later acknowledged that she had secured them there because "Nursing want[ed] Pharmacy to be responsible for checking the 'use by date' of the medication." *Defendant's Exhibit P, R. 57-16, PageID#:1269.*

Plaintiff Dr. Doran had to spell out-out Flumazenil for Nurse Gerkin in order for her to retrieve it from the Pyxis. *Doran Depo., R. 64, PageID#:1777-1778.* Nurse Carr heard the discussions about Narcan and began to draw up an injection. *Defendant's Exhibit GG, R. 57-33, PageID#:1376-1377.*

Nurse Nicole Cramer, R.N. ("Nurse Cramer") entered the room, and oxygen was supplied to Patient A with an ambu bag. *Doran Depo., R. 64, PageID#:1765.* Plaintiff asked Nurse Cramer to call a Code Blue, which was the first time she had ever been required to do so for one of her patients. *Id., PageID#:1763-1765.* Before the emergency response team arrived, however, the anesthesiologist had taken over and secured a temporary airway. *Id., PageID#:1778-1779.* The patient's heart rate then dropped but soon returned to normal. *Id., PageID#:1779-1780.* At that point, Patient A was stable. Scott J. McKeon ("Dr. McKeon") and the code blue team appeared and gathered from the conversation in the room that Narcan had been ordered. *Defendant's Exhibit GG, R. 57-33, PageID#:1376.* He promptly countermanded Plaintiff's request for the reversal agent. *Doran Depo., R.*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

*64, PageID#:1781-1782.* Instead of rescuing the patient with Narcan, he removed the existing airway and intubated the patient, which then necessitated his admission to the hospital. *Id., PageID#:1782.*

As a result of the incident with Patient A, Plaintiff was suspended from performing endoscopies and other invasive procedures. *Defendant's Exhibit GG, R. 57-33, PageID#:1354; Doran Depo., R. 64, PageID#:1800.* She was still expected, however, to see VA patients for consultations. *Id.*

As the situation continued to worsen for Plaintiff, Dr. Borchers wrote a letter on February 28, 2015, to the Chief of Staff, Dr. Cooperman, expressing "safety concerns" arising from her care of Patient A as well as three other patients over a period of approximately six months (identified anonymously as Patients B, C, and D). *Defendant's Exhibit BB, R. 57-28, PageID#:1351.* The true extent of Dr. Borchers' vitriol was revealed during a Medical Executive Board ("MEB") hearing on March 12, 2015, when he maintained that Plaintiff's decision-making was so "poor" that he suspected she had "developed a brain tumor" and wanted "to get a CT scan. Really." *Medical Executive Board Hng., R. 38-10, PageID#:533; Defendant's Renewed Motion for Summary Judgment ("Defendant's Renewed S.J. Mtn."), R. 57, PageID#:925-926.*

After criticisms arose over whether the initial verbal order for Narcan had been clearly charted, Plaintiff added an addendum to Patient A's chart on March 16, 2015, memorializing her own recollection. *Doran Depo., R. 64,*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

*PageID#:1784-1786.* Nurse Gerkin, however, refused to co-sign the supplement with her. *Id., PageID#:1786.*

## III. THE VA TERMINATION AND ADMINISTRATIVE REVIEW

While an Administrative Investigative Board ("AIB") found support for Dr. Borchers' accusations in a Memorandum that was issued on May 7, 2015, termination was not recommended. *Defendant's Exhibit GG, R. 57-33, PageID#:1379.* Only "[a]ppropriate corrective action" was proposed. *Id.*

Following further administrative proceedings, the Director of the Columbus VA, Keith Sullivan, found that the four alleged incidents involving Patients A, B, C, and D justified the termination of Plaintiff's employment effective August 21, 2015. *Defendant's Exhibit NN, R. 38-40, PageID#:789.*

Plaintiff pursued her right as a VA employee to administratively appeal the decision in accordance with 38 U.S.C. § 7461. Comprehensive affidavits, reports, and questionnaire responses were prepared by three highly qualified Gastroenterologists confirming that she had fully complied with the applicable standards of care for each of the patients under review. *Plaintiff's Supplement, R. 68-1, PageID#:2041-2065.* Gregory D. Gibbons, M.D. explained that while he considered Patient A to be generally high risk for endoscopy because of his weight and history of sleep apnea, the sedation dosages were still appropriate. *Id., Exhibit B, R. 68-1, PageID#:2042.* In his view, it was unacceptable that the nurses did not have immediate access to and knowledge of the reversal agents. *Id., PageID#:2043.* The former Chief

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

of Staff at the Cleveland Clinic Hillcrest Hospital, Michael H. Frankel, M.D., was in agreement that the suspension of Plaintiff's privilege was "totally unjustified," and no disciplinary action was warranted at all with regard to the care that had been provided. *Id., Exhibit C, R. 68-1, PageID#:2048.* He was mystified that Plaintiff could have been rated "outstanding" in her Proficiency Reports from 2009 through 2013 and then dropped to "Low Satisfactory" in 2014. *Id.* His assessment was that "the care provided by Dr. Doran to her patients and overall contribution to the Gastroenterology Division is of a high quality." *Id., PageID#:2049.* Finally, Sangreeta Agrawal, M.D. ("Dr. Agrawal"), who had been working as a Gastroenterologist in the VA systems since 2009, agreed that the treatment furnished had been appropriate and the dosage provided to Patient A "was within society guidelines." *Id., Exhibit D, R. 68-1, PageID#:2055.* Dr. Agrawal's conclusions were particularly significant, as she had been asked earlier by Plaintiff's employer in February 2015 to conduct a Peer Review of her care. *Id., PageID#:2056.* While she was initially critical of her, Dr. Agrawal's opinions changed after she an opportunity to review "additional records" pertaining to Patient A. *Id.* With regard to Patient A in particular, Dr. Agrawal explained:

> Due to the obvious delay in Narcan due to factors that are not solely Dr. Doran's fault, this incident should have been handled by providing additional education to the nurse and code blue physician involved regarding reversal agent use with moderate sedation events and no punitive action taken against Dr.

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

Doran. I would definitely not suspend privileges of a qualified gastroenterologist and endoscopist due to this event.

*Id., PageID#:2058-2059.*

Following another hearing, the V.A. Disciplinary Appeals Board ("DAB") found that only the charges with regard to Patient A had been sustained. *Defendant's Exhibit P, R. 57-16, PageID#:1270-1278.* The written report that was issued on March 21, 2016, concluded with regard to Patient A:

> Dr. Doran initiated the emergency, but is not completely responsible for the consequences. Critically, the reversal agents had been moved from a readily accessible locked drawer to an Omnicell system, hindering and delaying access to them. By the time Nurse Gerkin presented Flumazenil to Dr. Varma 3-5 minutes had passed[,] and anesthesia was already there to secure an airway. Nurse Gerkin should have been more familiar with the agent and Omnicell access. Dr. Borchers and Dr. Cooperman both agree that if Narcan had been given quickly, the consequences were likely to have been much less.

*Id., PageID#:1271* (citations omitted).

Even though Plaintiff's care with regard to the other three patients was validated, the VA's DAB found that her treatment of Patient A "was so removed from the standard of care" that her discharge was still warranted. *Defendant's Exhibit P, R. 57-16, PageID#:1278.* But the administrative tribunal was also critical of Dr. Borchers and specifically identified "many inaccuracies" that were contradicted by the record. *Id., PageID#:1270; Borchers Depo., R. 63, PageID#:1532-1533.* He had, of course, been the

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

"main source" of the information that was furnished during the review proceedings and had been "pursuing a course of progressive discipline against Dr. Doran for the preceding 6 months." *Defendant's Exhibit P, R. 57-16, PageID#:1270*. Although one would have thought perjury would have been a concern for Defendant VA, the male Chief of Gastroenterology received absolutely no discipline for falsely maligning a female subordinate physician during an administrative appeal hearing. *Borchers Depo., R. 63, PageID#:1530, 1533-1534*.

As a result of Defendant VA's findings of incompetence and dangers to patient safety, an investigation was initiated by the Ohio State Medical Board. *Defendant's Exhibit SS, R. 38-45, PageID#:812*. Notice was issued on February 14, 2018, that the Board intended to "determine whether or not to limit, revoke, permanently revoke, suspend, refuse to grant or register or renew or reinstate [Plaintiff Dr. Doran's] license or certificate to practice medicine and surgery[.]" *Id.*

## IV. THE LEGAL PROCEEDINGS

While Plaintiff pursued further review in federal court, this Court eventually concluded that she was unable to demonstrate that the administrative ruling was arbitrary and capricious or any constitutional violations. *Doran v. Wilkie*, 768 F. App'x 340 (6th Cir. 2019).

This second appeal arises from the claims of discrimination and retaliation that Plaintiff had separately filed on July 8, 2016. *Plaintiff's*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

*Complaint, R. 1, PageID#:1.* Her Complaint detailed the course of the false accusations and harassment she had suffered throughout 2014 and into 2015, all of which appeared to begin with her complaints of how her VA EDRP status was being handled. *Id., ¶ 8-55, PageID#:3-22.* Separate claims were raised for sex discrimination (First Cause of Action), perceived disability discrimination (Second Cause of Action), unlawful retaliation (Third Cause of Action), sexual harassment (Fourth Cause of Action), Lilly Ledbetter Fair Pay Act of 2009 (Fifth Cause of Action). *Id., ¶ 56-94, PageID#:22-28.* Defendant submitted an Answer denying liability and asserting various affirmative defenses on December 9, 2016. *Defendant's Answer, R. 10, PageID#:84.* At Defendant's request, the proceedings were stayed pending the outcome of Plaintiff's separate appeal of the termination decision. *Order, R. 21, PageID#:141.*

Following the release of the aforementioned Sixth Circuit decision, *Doran,* 768 F. App'x 340, the stay was lifted on May 21, 2019. *Order, R. 35, PageID#:178.* Defendant then moved for summary judgment on August 22, 2019. *Defendant's Withdrawn Motion for Summary Judgment, R. 38, PageID#:181.* Fifty-one exhibits were attached to the voluminous submission. *Id.* Following a status conference, the parties agreed to allow a Magistrate Judge to adjudicate the remainder of the proceedings. *Joint Notice, R. 46, PageID#:875.* Another Status Conference was then held during which the Magistrate urged the parties to simplify the proceedings

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

for her by agreeing to stipulations. *Order, R. 51, PageID#:879.* In compliance therewith, Defendant withdrew the pending motion for summary judgment. *Defendant's Notice of Withdrawal of R. 38 Motion for Summary Judgment, R. 53, PageID#:882.* At the same time a set of Stipulations were filed. *Parties' Stipulation of Facts, R. 56, PageID#:888.* Although they were signed by her counsel, Plaintiff had never approved the stipulations. *Plaintiff-Appellant's Motion to Supplement and Modify Record filed May 18, 2021 ("Plaintiff's Supp. Mtn."), 6th Cir. Doc#:24-1, Exhibit 2.*

Defendant then renewed the Motion for Summary Judgment with several of the earlier exhibits omitted. *Defendant's Renewed S.J. Mtn., R. 57, PageID#:899.* Plaintiff opposed the application on February 29, 2020. *Plaintiff's Memorandum Contra Motion for Summary Judgment ("Plaintiff's S.J. Opp."), R. 65, PageID#:1855.* A separate Supplement followed on March 27, 2020, which included a number of supporting exhibits. *Plaintiff's Supplement, R. 68, PageID#:2039.* The summary judgment briefing closed when Defendant filed a Reply later that day. *Defendant's Reply in Support of Motion for Summary Judgment, R. 69, PageID#:1952.*

On May 29, 2020, the Magistrate granted summary judgment upon all claims in favor of Defendant. *Opinion and Order, R. 70, PageID#:2091.* The Judgment was journalized on the same day. *Judgment, R. 71,*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

## V.   THE FINAL MEDICAL BOARD DECISION

Shortly after the summary judgment decision was released, Plaintiff learned that she had been fully exonerated by the Medical Board with regard to her care of Patient A.[1] According to the Official Minutes of the proceedings that were conducted on May 13, 2020, Board Member Michael Schottenstein, M.D. expressed his support for Plaintiff and identified the following "mitigating factors":

- Absence of a prior disciplinary record.

---

[1] Because the Medical Board's findings and meeting minutes could not be introduced into the summary judgment proceedings below before the Magistrate Judge issued her final order, Plaintiff has requested that this Court modify the record accordingly in the interest of equity and justice. *See Plaintiff's Supp. Mtn.*  In the event that this request is overruled prior to a final disposition of this appeal, Plaintiff hereby renews the Motion. *See CSX Transp. Inc. v. Garden City*, 235 F.3d 1325, 1300 (11th Cir. 2000). Alternatively, judicial notice should be taken of the Medical Board proceedings, findings, and ruling. *See, e.g., Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971) (federal appellate court takes judicial notice of relevant developments occurring during the course of the appeal, including a decision issued by the U.S. Department of Health and Welfare); *Ricketts v. Attorney Gen. of United States,* 800 F. App'x 66, 68 (3d Cir. 2020) (taking judicial notice on appeal of administrative removal order); *Hodgson v. Farmington City*, 675 F. App'x 838, 840-41 (10th Cir. 2017) (affirming District Court's decision to take judicial notice of the parties' other administrative and judicial proceedings).   It is, of course, perfectly acceptable on appeal for judicial notice to be taken of governmental proceedings, the accuracy of which cannot reasonably be questioned. *Colvin v. Veterans Admin. Med. Ctr.,* 390 F. App'x 454, 456 (6th Cir. 2010) (judicial notice taken on appeal of Title VII race discrimination claim of findings by the Ohio Department of Jobs and Family Services); *International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am. v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) (judicial notice taken by federal appellate court of the decisions and orders of the National Mediation Board).

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

- Absence of a selfish or dishonest motive.

- This appears to be an isolated incident that is unlikely to recur.

- Dr. Doran has made full and free disclosure to the Board.

- Dr. Doran did not try to use the confidentiality inherit in the VA peer review process as a shield regarding her behavior when she was answering questions on her renewal application.

*See Plaintiff's Supp. Mtn., Exhibit 1, p. 00021.* Orthopedic Surgeon Jonathan B. Fiebel, M.D. was in agreement for the most part "but he struggled with this case because it concerns one incident in an otherwise perfect track record." *Id., p. 00022.* He observed "that there are times when people are treated unfairly by institutions." *Id.* Fellow Board Member (and former Ohio Attorney General) Betty Montgomery shared that she was also "troubled by this case." *Exhibit 1, p. 00022.* After noting what Plaintiff had already suffered through, she "supported the idea of taking no likewise action." *Id.*

Anesthesiologist Amol Soin, M.D. further commented:

> Dr. Soin stated that he did not want to relitigate the VA matter, but he found Dr. Doran's explanation of this isolated incident to be reasonable and something that could happened to anyone. Dr. Soin stated that as an anesthesiologist himself, he understands that when heavily-sedated patients begin to desaturate, things happen very rapidly and one must have all materials available at all times. However, over the past ten years facilitates have been locking medications in a [Pyxis MedStation] and putting

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

them in locations where the anesthesiologist does not have access to them, and this sometimes happens without the anesthesiologist's knowledge. This leads to a situation in which an anesthesiologist is trying to take care of a patient in a chaotic environment and must find the needed medicine somewhere.

Dr. Soin did not believe that Dr. Doran was nefarious or trying to do anything to harm patients. <u>Dr. Soin also did not believe that Dr. Doran represents a risk of harm to the public in the future. Dr. Soin opined that Dr. Doran had been in a very difficult situation, which seemed to Dr. Soin to have been more of a process issue and not necessarily a patient care issue.</u>

*Exhibit 1, p. 00022* (emphasis added). Another Board Member who specialized in pulmonary and critical care medicine, Harish Kakarala, M.D., held these sentiments as well:

Dr. Kakarala agreed with Dr. Soin and stated that this seems more like a systems problem. Dr. Kakarala stated that as someone who has to intubated people in emergent situations, <u>he knows there are times when the physician needs something immediately that is not available and the physician has no recourse other than to do his or her best, and this affects outcomes</u>.

*Id.* (emphasis added). Without a single dissent, the Medical Board concluded that no discipline at all was warranted against Plaintiff in connection with her care and treatment of Patient A. *Id., 00023*.

## VI.   THE SECOND APPEAL

Plaintiff retained new counsel and commenced this second appeal on June 29, 2020. *Plaintiff's Notice of Appeal, R. 72, PageID#:2117*. She is now before this Court seeking a reversal of the Magistrate's untenable final

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

judgment and a restoration of her professional reputation, consistent with the findings and conclusions of the State Medical Board of Ohio.

## SUMMARY OF ARGUMENT

While Defendant VA will undoubtedly attempt to justify the termination of Plaintiff Dr. Doran's employment on the basis of a wide variety of purported mistakes, blunders, and other poor decisions, the fact will remain at the end of the day that the <u>only</u> incident that was sustained during Defendant VA's administrative review process involved a single episode with a single patient; Patient A. For the first seven years of her employment at the Wylie VA Medical Center, her professional record and reputation was impeccable. Nonetheless, EDRP benefits were denied to Plaintiff while such awards were quickly given to male doctors. And while the Patient A incident involved at worst, a possible miscommunication over an order for Narcan, Defendant VA has continually exaggerated the unfortunate events while twisting them into such an egregious violation of the duty of care that immediate discharge was the only acceptable sanction. The discriminatory motivation is evident, as the defense has been continuously unable to identify a single prior instance where a male physician was terminated based upon a single incident of non-fatal mismanaged patient care.

Nor is there now any justification for concluding the episode involving Patient A was anything more than an unfortunate patient reaction to

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

sedatives that were administered within the limits of every recognized dosage standard. The <u>only</u> administrative agency outside the VA to review the care that has been furnished to Patient A has concluded unanimously and without equivocation that Plaintiff did nothing deserving of any sanctions at all. *Plaintiff's Supp. Mtn., Exhibit 1.* The State Medical Board of Ohio is easily the most authoritative, as well as definitive, agency to evaluate such matters, and the final decision that was rendered should now be accepted by all concerned. Once the pretext for Plaintiff's firing is established, it becomes readily apparent that she has been the victim of a maniacal crusade to oust her from the Gastroenterology Department. Whether all of Dr. Borchers' deep-seeded animus arose from a desire for an all-male physician staff or to put an end to the female Gastroenterologist's complaining about the unequal treatment she was suffering, or both, a valid claim of discrimination and retaliation had been established under Title VII of the Civil Rights Act that should have been submitted to a jury.

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

## **ARGUMENT**

## I.    **STANDARD OF REVIEW**

### A.    **District Court**

Summary judgment may be granted pursuant to Fed. R. Civ. P. 56(c) only when the moving party has sufficiently demonstrated the absence of any genuine issues of material fact, thereby allowing judgment to be entered as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct.

2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "A party seeking summary judgment bears the burden of proving there is no genuine issue of material fact." *Natl. Bank of Detroit v. Shelden,* 730 F.2d 421, 423 (6th Cir. 1984). All evidence and inferences must be construed in the light most favorable to the responding party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962). Thus, before judgment may be entered as a matter of law "the court should review the record as a whole" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (citing 9A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2529, p. 299 (2d Ed. 1995)).

## B.     Appellate Court

Since this Court enjoys the same vantage as the District Court with respect to determining whether summary judgment is appropriate in this case, the lower court's decision should be reviewed *de novo*. *DePiero vs. Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999). Accordingly, no particular deference should be afforded to the trial judge. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004); *Brannam v. Huntington Mtge. Co.*, 287 F.3d 601, 603 (6th Cir. 2002); *Sones-Morgan v. Hertz Corp.*, 725 F.2d 1070, 1072 (6th Cir. 1984).

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

## II.    THE PROPERLY ESTABLISHED CLAIM OF SEX DISCRIMINATION

### A.    The Shifting Burdens of Proof

As previously noted, Plaintiff's First Cause of Action seeks to impose liability for discrimination based upon sex as permitted by 42 U.S.C. § 2000e-16(c).  This provision is a component of Title VII of the Civil Rights Act, one of the ultimate goals of which is to eliminate sex discrimination in employment.  *Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251, 1256 (6th Cir. 1981).  The ultimate question in such a case is always whether the employee has established intentional discrimination on the part of the employer.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1011-12 (6th Cir. 1987).

When direct proof of a discriminatory motivation is unavailable, the burden-shifting test that was established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), may be utilized.  This Court has observed that a female employee may meet the initial requirement of establishing a *prima facie* case with proof that she was a member of the class protected under Title VII and "was treated differently" that a non-protected person.  *Hall v. Ledex, Inc.*, 669 F.2d 397, 399 (6th Cir. 1982); *see also Rimedio v. Revlon, Inc.*, 528 F. Supp. 1380, 1388 (S.D. Ohio 1982); *Reed v. S. Bend Nights, Inc.*, 128 F. Supp. 3d 996, 999 (E.D. Mich. 2015).  "The burden of establishing a *prima facie* case of disparate treatment

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40ᵗʰ Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

is not onerous." *Burdine* at 253. At that point, the burden then shifts to the employer to establish a legitimate non-discriminatory reason for the employment action that the Plaintiff is entitled to rebut in response. *Griffin v. Finkbeiner*, 689 F.3d 584, 593-94 (6th Cir. 2012).

## B. The *Prima Facie* Case of Gender Discrimination

The Magistrate accepted Defendant VA's contention that a terminated female employee can establish a *prima facie* case only by specifically identifying a similarly qualified and nonprotected person within her department who either replaced or was treated differently than her. *Opinion and Order, R. 70, PageID#:2106* (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)). The obvious problem with this myopic view of Title VII is that an employer can easily evade civil liability by filling the position with another protected employee (whether on account of gender, race, age, or disability) or even just leaving the vacancy open until the statute of limitations has run. All that should be required is proof of disparate treatment and not necessarily an actual replacement with a similarly qualified non-protected person. *Internatl. Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977); *Hall*, 669 F.2d at 399; *Equal Emp. Opportunities Comm. v. Ball Corp.*, 661 F.2d 531, 537 (6th Cir. 1981); *Grano v. Dept. of Dev. of City of Columbus*, 637 F.2d 1073, 1081; *Molloy v. Blanchard*, 115 F.3d 86, 91 (1st Cir. 1997); *Palmer v. Shultz*, 815 F.2d 84, 90 (D.C. Cir. 1987).

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

The Magistrate plainly read *Wright*, 455 F.3d 702, too strictly, as the decision certainly does <u>not</u> hold that unless a similarly qualified nonprotected person is specifically identified who received better treatment, a terminated employee can never establish a *prima facie* case. The African-American Employee in *Wright* simply undertook that approach because that was the easiest way for him to establish the discriminatory mistreatment. *Id.* at 707.

By all credible accounts in the case *sub judice*, Plaintiff Dr. Doran suffered disparate treatment because Defendant VA has never terminated a male physician with an otherwise unblemished record based upon a single non-fatal episode of alleged incompetence. Dr. Borchers himself had dealt "two or three times" with a sedation event requiring him to "use Narcan or Flumazenil," and he agreed that "[p]otentially the patient could have done worse" had a nurse failed to follow his instructions with regard to these medicines. *Borchers Depo., R. 63, PageID#:1518, 1601-1602.* Yet he was never disciplined. *Id., PageID#:1518.* When one factors in that the primary accuser, Dr. Borchers, was found to have furnished "many inaccuracies" during his testimony, *Defendant's Exhibit P, R. 57-16, PageID#:1270*, and was later thoroughly contradicted by the State Medical Board, *Plaintiff's Supp. Mtn., Exhibit 1*, the inference of a discriminatory motivation becomes undeniable. Even the Defendant VA's DAB noted the "personal difficulties between Dr. Borchers and Dr. Doran, and he had been pursuing a course of

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

progressive discipline against [her] for the preceding 6 months." *Defendant's Exhibit P, R. 57-16, PageID#:1270.*

And if the administration of Narcan was required during Patient A's sedative reaction, then one would have expected Defendant VA to at least inquire into the conduct of the other male physician in the room—Dr. McKeon. He had actually instructed the staff <u>not</u> to administer the reversal agent as Plaintiff had ordered. *Defendant's Exhibit GG, R. 57-33, PageID#:1376.* Nurse Carr had the injection drawn up by that time, which was never administered. *Id., PageID#:1376-1377.* The Magistrate plainly erred as a matter of law by agreeing with Defendant that none of this mattered so long as Plaintiff could not also show that she was replaced by a specific non-protected physician of equal status.

It is certainly significant in this regard that while Defendant moved quickly to impose the most extreme sanction possible against a female physician for a single episode of allegedly mismanaged patient care and recordkeeping, which was ultimately discredited, absolutely nothing was done in response to the findings of the agency's own appeals board that a male physician had testified falsely during the administrative proceedings. *Defendant's Exhibit P, R. 57-16, PageID#:1270* ("many inaccuracies"); *Borchers Depo., R. 63, PageID#:1532-1534.* To the contrary, it appears that Dr. Borchers remains as one of the four physicians still staffing the Wylie VA Ambulatory Care Center's Gastroenterology Department, all of whom are

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

now men.[2] Nothing further should have been required to establish the *prima facie* case under the venerable *McDonnell Douglas* test.

### C.     The Pretext for Discrimination

Once the *prima facie* case has been established, the inappropriateness of the entry of summary judgment upon the Title VII claim becomes readily apparent.  Such a disposition is unwarranted when triable issues of fact exist over whether the purported justifications are merely pretextual.  *Potter v. Synerlink Corp.*, 562 F. App'x. 665, 675 (10th Cir. 2014).    Simply demonstrating that a non-discriminatory rational could have existed does not necessarily entitle the employer to an immediate exit from the litigation, as a legitimate question may exist as to whether that was the actual motivation for the adverse employment action.  *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 437-38 (6th Cir. 2009); *Wright v. Autozone Stores, Inc.*, 951 F. Supp. 2d 973, 995-96 (W.D. Mich. 2013).

It is important to remember that Plaintiff's termination was initially based upon charges of incompetence involving four different patients as well as other purported violations of the duties that were owed as a physician.  *Defendant's Exhibit HH, R. 57-34, PageID#:1382*.  But <u>only</u> the incident involving Patient A was sustained by the VA's DAB.  *Defendant's Exhibit KK,*

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

---

[2]  See https://www.columbus.va.gov/services/Gastroenterology.asp     This Court should take judicial notice of the information currently furnished on Defendant VA's own website.  *Colvin v. Veterans Admin. Med. Ctr.,* 390 F. App'x at 456; *International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am.*, 394 F.2d at 40.

*R. 57-37, PageID#:1438.*  That was "the final administrative action in this case" before Defendant VA.  *Id.*  While Defendant VA has nevertheless devoted considerable time and attention during the summary judgment proceedings below to lambasting Plaintiff for decisions and actions completely unrelated to Patient A, this effort was thus pointless.  The <u>only</u> <u>official</u> justification that survived the VA administrative review process was the treatment of and supplemental charting regarding Patient A.  *Id.*

As a matter of law, the Magistrate plainly erred by endorsing Defendant VA's purported nondiscriminatory rationalization on the grounds that in the earlier appeal the "Sixth Circuit conducted a *de novo* review of the VA's administrative action," and had joined the other administrators in independently finding that Plaintiff "pose[d] a risk to patient safety[.]" *Opinion and Order, R. 70, PageID#:2100, 2113.*  To begin with, this Court conducted a *de novo* review of the District Court's summary judgment decision, <u>not</u> the VA's determination to terminate Plaintiff.  *Doran*, 768 F. App'x at 349.  The panel actually recognized that "a lesser sanction may also have been appropriate[.]"  *Id.* at 352.  But as mandated by 38 U.S.C. § 7462(f)(2), the appellate court, like the District Court, was only authorized to set aside an agency decision that was (A) "arbitrary, <u>capricious, an abuse</u> <u>of discretion</u>, or otherwise not in accordance with law;" (B) "obtained without procedures required by law, rule, or regulation having been followed;" or (C) "unsupported by substantial evidence."  *Id.* at 349

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

(emphasis added). But while deference is thus generally afforded to agency decisions in such direct review proceedings, federal courts are not bound by such administrative rulings in separate Title VII discrimination actions. *Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 518 (6th Cir. 2009).

Even if this Court had reviewed Defendant VA's termination decision *de novo* in the first appeal, the decision was rendered without the benefit of the State Medical Board's findings and ruling. *Doran*, 768 F. App'x 340. As established earlier in this Memorandum, the highest administrative agency to review the care and treatment that was provided to Patient A has now spoken and determined that no sanction of any kind is warranted. *Plaintiff's Supp. Mtn., Exhibit 1.* As observed by the Anesthesiologist Board Member, Dr. Soin, Plaintiff's explanation for the "isolated incident" was "reasonable and something that could happen to anyone." *Id., p. 00022.* While this Court could justifiably refuse to afford any consideration to the prior administrative determinations by substantially less-qualified tribunals, at a minimum, triable issues of fact have now been established by this latest ruling over whether the termination out of concern for patient safety was a mere pretext for unlawful discrimination.[3]

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

---

[3] In addition to the previously cited testimony that was furnished during the VA administrative proceedings, Plaintiff Dr. Doran's full compliance with the duties of care that were owed was later confirmed in an affidavit and report dated November 6, 2019 that was prepared by Cleveland Clinic Gastroenterologist John J. Vargo, II, M.D. *Plaintiff's Exhibit E, R. 68-1, PageID#:2066-2076.* An Attending Anesthesiologist, an Associate

Indeed, it is difficult to fathom why the Magistrate was persuaded to afforded "great weight" to these prior agency decisions. *Opinion and Order, R. 70, PageID#:2113.* All of them were conducted within the VA itself, where it was unlikely that any rulings would be issued that would be upsetting to Plaintiff's superiors. While it is indeed remarkable that the DAB found that only one episode of allegedly mismanaged patient care could be sustained and was highly critical of Dr. Borchers, the predictable outcome was still that the termination decision was upheld. The first and only opportunity that Plaintiff ever received for a truly impartial evaluation by a highly qualified medical authority was before the State Medical Board of Ohio. While the Magistrate was unwilling to wait for that final and conclusive decision to be issued, this Court should now afford the findings due consideration and conclude that the prior VA agency rulings are no longer credible.

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

---

Professor at Vanderbilt University Medical Center, Michael G. Richardson, M.D., agreed with this assessment from an anesthesiology standpoint. *Id., Exhibit F, R. 68-1, PageID#:2077-2079.* And an Affidavit and Report dated February 23, 2019, from the former Director of Critical Care Medicine at Summa Health, Brad R. Martin, M.D., likewise verified that Plaintiff "did not breach the standard of care regarding the moderate sedation dose delivered to Patient A[.]" *Id., Exhibit G, ¶ 6, R. 68-1, PageID#:2081.* His opinion was that "it is very possible that Patient A may have experienced Fentanyl-Induced Chest Wall Rigidity Syndrome." *Id., ¶ 7.* The Board-Certified Internist and Critical Care Physician "found it extremely concerning that the reversal agents were not readily available and that verbal orders for Narcan were not immediately acted upon." *Id., ¶ 8.*

## III. THE RETALIATION CLAIM

### A. The *Prima Facie* Case of Retaliation

Although the Magistrate below determined that Plaintiff's Title VII retaliation theory of recovery had been abandoned, such claims are evaluated under the same "order and allocation of proof" as title VII discrimination claims. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (citing *McDonnell Douglas*, 411 U.S. at 802-04). This Court has followed the *Cohen* decision in describing the elements of a *prima facie* retaliation claim:

> (1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987). A causal connection between the protected activity adverse employment action may be established by a demonstration that these events occurred within the same timeframe. *Id.* at 501; *Burrus v. United Tel. Co. of Kansas*, 683 F.2d 339, 343 (10th Cir. 1982); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2d Cir. 1980); *Womack v. Munson*, 619 F.2d 1292, 1296 n.6 (8th Cir. 1980). Relevant here, 42 U.S.C. § 2000e-3(a) directs that it "shall be an unlawful employment practice for an employer to discriminate against any of his employees * * * because he has opposed any practice made an unlawful employment practice by this subchapter."

PAUL W. FLOWERS CO., L.P.A
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

## B.    The Plaintiff's Retaliation Positions

While the organization of Plaintiff Dr. Doran's memorandum opposing summary judgment did not lay out her *prima facie* case of retaliation all on one page or under a single heading, the essential elements of this claim and supporting facts were briefed and argued for the Magistrate. *Plaintiff's S.J. Opp., R. 65, PageID#:1863-1864, 1868-1869, 1875, 1878.* Plaintiff had complained to Dr. Cooperman, the Human Resources Department, and her union about the handling of her request for EDRP benefits in 2014 on the specific basis of gender discrimination. *Doran Depo., R. 64, PageID#:1706-1708, 1810-1812; Plaintiff's S.J. Opp., R. 65, PageID#:1863-1864.* Her basis for this understandable grievance was that a male physician, Dr. Maryala, had shown Dr. Doran "a breakdown of all of the bonuses he got," including EDRP benefits, on a document on his cellular phone. *Doran Depo., R. 64, PageID#:1706.* Around the same time, Dr. Borchers began to single out the Plaintiff by "making derogatory comments" in her 2014 proficiency report based upon "the same actions that the men would do." *Doran Depo., R. 64, PageID#:1714; Plaintiff's S.J. Opp., R. 65, PageID#:1868.* And shortly following these complaints of unfair treatment in 2014, Dr. Doran was summarily suspended on January 26, 2015, based upon Dr. Borchers' warped view of the circumstances of Patient A's sedation event. *Doran Depo., R. 64, PageID#:1714; Plaintiff's S.J. Opp., R. 65, PageID#:1869, 1875, 1878.*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

Although her arguments were perhaps unartfully posed, each of the essential elements of Plaintiff Dr. Doran's retaliation claim were described to the Magistrate and supported by sufficient evidence to establish a *prima facie* claim. Particularly, causation is established by the close proximity in time between the moment that Dr. Doran was shown evidence of discrimination by Dr. Maryala, the protected complaints she made to Dr. Cooperman, the Human Resources Department, and her union, and the negative proficiency review followed quickly by the unnecessary suspension of her work duties. The Defendant had only argued that "there is no evidence that Dr. Doran's repeated complaints, over a span of years, regarding the nonpayment of the EDRP, were ever couched in terms of her belief that the EDRP was being withheld on the basis of her sex." *Defendant's Renewed S.J. Mtn., R. 57, PageID#:952.* In reality, she had reported this incident as discrimination to everyone she knew to be responsible for helping her:

Q. Tell me about the Columbus HR's practice with regard to EDRP, was it discriminatory?

A. [Dr. Maryala] got retention incentives and I did not get my retention incentive. And every time I asked about it they gave me a hassle asking for things that aren't even needed. And I even submitted everything, and they are still like, well, nope, you can't have it over and over again.

* * *

Q. Did you complain to anyone about Dr. Maryala receiving those payments?

A. Yeah, Cooperman and HR.

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

Q. Okay.  Who did you talk to in HR?

A. Candace Chandler and a bunch of other people, too, with all of the meetings that Cooperman had with them.

\* \* \*

Q. Let's talk a little bit about your retaliation claim. What is the protected activity that you're claiming led to retaliation by the VA?

A. <u>The first one is the EDRP award</u>.

Q. And how is that -- how did that lead to retaliation?

A. Because <u>Fred said after I went to the union to find out what I can do to get this thing finally started, he said that's when Cooperman started thinking differently about me, more aggressive and irritated</u>.

*Doran Depo., R. 64, PageID#:1705, 1707, 1810* (emphasis added).

The Defendant also asserted in a footnote:

Even assuming that Dr. Doran's earlier and ongoing complaints regarding the EDRP constituted protected activity, her retaliation claim nonetheless fails.  Where an employee has "been complaining to hospital executives about the pay system for years, she must offer a valid reason why" those complaints "would suddenly trigger retaliation."  *Leitgen v. Franciscan Sekmp Healthcare, Inc.*, 630 F.3d 668, 676 (7th Cir., 2011). There is no such a suggestion in the record.

*Defendant's Renewed S.J. Mtn., R. 57, PageID#:955 n.32*.  Wrong again.

Given that Plaintiff Dr. Doran was not aware until 2014 that Dr. Maryala was quickly awarded a benefit that she was denied, her complaints *of gender*

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

*discrimination* had not begun years beforehand. As well, the adverse employment actions taken against Plaintiff began when Dr. Borchers finished his probationary period as a supervisor in 2014. *Doran Depo., R. 64, PageID#:1714-1715.* It stands to reason that since this physician was the one taking adverse actions against Dr. Doran, it is no coincidence that he waited until he was fully empowered with a VA management role to use his authority over her.

Importantly, the Defendant *only* sought summary judgment on the retaliation claim on the theory that a *prima facie* case could not be established. *Defendant's Renewed S.J. Mtn., R. 57, PageID#:951-954.* There was never any attempt to establish a legitimate non-discriminatory reason for denying Plaintiff Dr. Doran the EDRP benefits that were quickly made available to the male doctors she worked with. *Id., PageID#:954-962.* The Magistrate's untenable dismissal of this theory of recovery therefore should be overturned.

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40ᵗʰ Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the District Court's Final Order as a matter of law and remand this action for a jury trial upon Plaintiffs' claims for damages and other relief.

Respectfully Submitted,

*s/ Paul W. Flowers*

Paul W. Flowers, Esq. (#0046625)
Louis E. Grube, Esq. (#0091337)
**PAUL W. FLOWERS CO., L.P.A.**

*Attorneys for Plaintiff-Appellant,*
*Trisha Doran, M.D.*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(a)(7)(B)(i) and (g)(1), I certify that this Brief complies with the court's type-volume limitation and the designated sections consist of approximately 8,115 words according to the word processing software utilized.

*s/ Paul W. Flowers*

Paul W. Flowers, Esq., (#0046625)
**PAUL W. FLOWERS CO., L.P.A.**

*Attorney for Plaintiff-Appellant,*
*Trisha Doran, M.D.*

## CERTIFICATE OF SERVICE

I certify that on May 24, 2021, the foregoing **Appeal Brief** was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*s/ Paul W. Flowers*

Paul W. Flowers, Esq., (#0046625)
**PAUL W. FLOWERS CO., L.P.A.**

*Attorney for Plaintiff-Appellant,*
*Trisha Doran, M.D.*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

# ADDENDUM

*Designation Of Relevant District Court Documents*

In accordance with 6 Cir. Rule 30(b), Plaintiff-Appellants hereby

designate the following relevant District Court documents:

| District Court Docket | PageID# | Description |
|---|---|---|
| R. 1 | 1-29 | Plaintiff's Complaint |
| R. 9 | 82-83 | Related Case Memorandum Order |
| R. 10 | 84-95 | Defendant's Answer |
| R. 38 and 38-1 through 38-51 | 181-867 | Defendant's Withdrawn Motion for Summary Judgment and Exhibits |
| R. 46 | 875 | Joint Notice of Consent to Magistrate Judge |
| R. 47 | 876 | Order of Consent to Magistrate Judge |
| R. 51 | 879 | Order Requiring Withdrawal of Motion for Summary Judgment and Filing of Stipulations |
| R. 52 | 880-881 | Stipulation of Dismissal of Certain Claims |
| R. 53 | 882-883 | Defendant's Notice of Withdrawal of R. 38 Motion for Summary Judgment |
| R. 57 and 57-1 through 57-38 | 899-1444 | Defendant's Renewed Motion for Summary Judgment and Exhibits |
| R. 63 | 1455-1653 | Deposition of Glen Borchers, M.D. |
| R. 64 | 1653-1854 | Deposition of Trisha Doran, M.D. |

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

| R. 65 | 1855-1897 | Plaintiff's Memorandum Contra Motion for Summary Judgment |
|---|---|---|
| R. 68 and 68-1 | 2039-2090 | Plaintiff's Supplemental Exhibits to Memorandum Contra Motion for Summary Judgment |
| R. 69 and 69-1 through 69-3 | 1952-2038 | Defendant's Reply in Support of Motion for Summary Judgment and Exhibits |
| R. 70 | 2091-2115 | Opinion and Order |
| R. 71 | 2116 | Judgment |
| R. 72 | 2117-2144 | Plaintiff's Notice of Appeal |

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395