# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

## CASE Nos. 20-3694

---

## TRISHA DORAN, M.D.,
### Plaintiff-Appellant,

### -vs-

## ROBERT WILKIE, ADMINISTRATOR, UNITED STATES DEPARTMENT OF VETERANS AFFAIRS
### Defendant-Appellees.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION
## CASE No. 2:16-CV-665

---

## REPLY OF PLAINTIFF-APPELLANT, TRISHA DORAN, M.D.

---

Paul W. Flowers, Esq. (#0046625)
Louis E. Grube, Esq. (#0091337)
**PAUL W. FLOWERS CO., L.P.A.**
Terminal Tower, 40th Floor
50 Public Square
Cleveland, Ohio 44113
(216) 344-9393
pwf@pwfco.com
leg@pwfco.com

*Attorneys for Plaintiff-Appellant, Trisha Doran*

Leah M. Wolfe, Esq. (#0093299)
Assistant United States Attorney
303 Marconi Blvd., Suite 200
Columbus, Ohio 43215
(614) 469-5715
leah.wolfe@usdoj.gov

*Attorney for Defendant-Appellee, Robert Wilkie, Administrator, United States Department of Veterans Affairs*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................ii

TABLE OF AUTHORITIES ............................................................iii

REPLY .........................................................................................1

    I.   THE DIVERSIONARY EFFORT ....................................1

    II.  THE QUESTIONABLE ADMINISTRATIVE REVIEW PROCESS ...................................................................2

    III. THE CONCLUSIVE MEDICAL BOARD DECISION....................5

    IV. THE FIRMLY ESTABLISHED *PRIMA FACIE* CASE OF GENDER DISCRIMINATION.......................................8

        A. Plaintiff's Replacement by a Male Counterpart.......................8

        B. The Misplaced Counterpart Requirement.............................10

        C. The Actual Comparable Employee Test.................................12

    V.  THE FACTUAL DISPUTE OVER PRETEXT .............................18

    VI. THE PROPERLY SUBSTANTIATED RETALIATION CLAIM ......................................................................22

        A. The True Extent of the Protected Activities...........................22

        B. The Evolving Standard of Causation Test .............................23

CONCLUSION.........................................................................26

CERTIFICATE OF COMPLIANCE............................................27

CERTIFICATE OF SERVICE....................................................27

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

# TABLE OF AUTHORITIES

## Federal Cases

*Babb v. Maryville Anesthesiologists P.C.*,
  942 F.3d 308 (6th Cir. 2019) ................................................................ 20, 21

*Babb v. Secy., Dept. of Veterans Affairs*,
  992 F.3d 1193 (11th Cir. 2021) ................................................................ 25

*Babb v. Wilkie*,
  140 S.Ct. 1168, 206 L.Ed.2d 432 (2020) ............................................ 24, 25

*Benjamin v. Brachman*,
  246 Fed. App'x. 905 (6th Cir. 2007) ........................................................ 6

*Carter v. Univ. of Toledo*,
  349 F.3d 269 (6th Cir. 2003) ............................................................ 9, 10

*Chen v. Dow Chem. Co.*,
  580 F.3d 394 (6th Cir. 2009) ................................................................ 18

*Colvin v. Veterans Admin. Med. Ctr.*,
  390 F. App'x 454 (6th Cir. 2010) ........................................................... 14

*Durr v. Secy., Dept. of Veterans Affairs*,
  843 F. App'x 246 (11th Cir. 2021) .................................................... 25, 26

*Ercegovich v. Goodyear Tire & Rubber Co.*,
  154 F.3d 344 (6th Cir. 1998) ............................................................ 13, 17

*George v. Youngstown State Univ.*,
  966 F.3d 446 (6th Cir. 2020) ................................................................ 21

*Hall v. Ledex, Inc.*,
  669 F.2d 397 (6th Cir. 1982) ................................................................ 12

*Hoskins v. Oakland County Sheriff's Dep't*,
  227 F.3d 719 (6th Cir.2000) ................................................................. 11

*Jackson v. VHS Detroit Receiving Hosp., Inc.*,
  814 F.3d 769 (6th Cir. 2016) ......................................................... Passim

*Kline v. Tennessee Valley Auth.*,
  128 F.3d 337 (6th Cir. 1997) ................................................................. 9

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

iii

*Knox v. Neaton Auto Prod. Mfg., Inc.*,
 375 F.3d 451 (6th Cir.2004) .......................................................11

*Lott v. ICS Merrill*,
 483 F. App'x 214, (6th Cir. 2012)..............................................22

*Malone v. United States Atty. Gen.*,
 2021 Wl 2134850 (11th Cir. May 26, 2021) ..............................25

*Michael v. Caterpillar Fin. Servs. Corp.*,
 496 F.3d 584 (6th Cir.2007)........................................................11

*Mitchell v. Toledo Hosp.*,
 964 F.2d 577 (6th Cir. 1992) ........................................... 11, 12, 17

*Moore v. Univ. of Memphis*,
 2013 WL 6550434 (W.D. Tenn. Aug. 16, 2013) ................................ 14, 20

*Pierce v. Commonwealth Life Ins. Co.*,
 40 F.3d 796 (6th Cir.1994) ........................................................ 13

*Provenzano v. LCI Holdings, Inc.*,
 663 F.3d 806 (6th Cir. 2011) ...................................................... 18

*Risch v. Royal Oak Police Dep't*,
 581 F.3d 383 (6th Cir. 2009) ......................................................20

*Robinette v. Promedica Pathology Labs.*,
 2021 WL 1158181 (6th Cir. Jan. 5, 2021) ....................................23

*Romans v. Mich. Dep't of Human Servs.*,
 668 F.3d 826 (6th Cir. 2012) ...................................................... 19

*St. Mary's Honor Center v. Hicks*,
 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ............................20

*Strickland v. City of Detroit*,
 995 F.3d 495 (6th Cir. 2021) ...................................................... 21

*Texas Dept. of Cmty. Affairs v. Burdine*,
 U.S. 101 S.Ct. 1089.................................................................. 19

*Tonkyro v. Secy., Dept. of Veterans Affairs*,
 995 F.3d 828 (11th Cir. 2021) ....................................................25

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

*Troupe v. Dejoy,*
   2021 WL 2530188 (11th Cir. June 21, 2021)..............................................25

*Vincent v. Brewer Co.,*
   514 F.3d 489 (6th Cir. 2007) ..........................................................10, 11, 12

*Webb v. R & B Holding Co.,*
   992 F.Supp. 1382 (S.D. Fla. 1998) ..........................................................23

*White v. Baxter Healthcare Corp,*
   533 F.3d 381 ........................................................................... 19, 20

*Whitfield v. Tennessee,*
   639 F.3d 253 (6th Cir. 2011) ....................................................................20

## Federal Statutes

38 U.S.C. § 7462(B)(1)(A) .......................................................................... 2, 7

42 U.S.C. § 2000E-16(A).............................................................................25

## State Statute

R.C. § 4731.01 .............................................................................................5

## Federal Rule

Fed. R. App. P. 32.....................................................................................28

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

# <u>REPLY</u>

Most of the positions that have been asserted in the Brief for Defendant-Appellees Robert Wilkie & U.S. Department of Veterans Affairs ("Defendants' Brief") were anticipated and addressed in the Brief of Plaintiff-Appellant ("Plaintiff's Brief"), Trisha Doran, M.D. ("Dr. Doran"). For the sake of brevity, those topics will not be revisited. A few final points must be made, however, in closing.

## I.    THE DIVERSIONARY EFFORT

Just as anticipated, Defendant-Appellees, Administrator Robert Wilkie and the U.S. Department of Veterans Affairs (collectively "Defendants"), have continued to devote considerable attention to the supposed mistreatment of Patients B, C, and D as well as to vague disparagements such as *"Nursing concerns."'   Defendants' Brief, pp. 15-16, 23*.  And they have dedicated an entire section of their Statement of the Case to the V.A. Disciplinary Appeals Board ("DAB") proceedings, which was the culmination of – in their words – "a carefully crafted" Congressional administrative review mechanism designed "to guarantee that the VA's professional employees were not unfairly disciplined."   *Id., pp. 24-27, 52*. Yet, not once do they offer any meaningful acknowledgement of the findings favorable to Dr. Doran.  *Id.*  The DAB concluded that a majority of the charges were "not sustained[,]" including <u>every one</u> involving Patients B, C, and D. *Defendants' Exhibit P, R. 57-16, PageID#:1266-1288*.

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 9395

By continuing to malign Dr. Doran with accusations of incompetence that did not survive administrative review, Defendant VA is attempting to undermine that very "carefully crafted" process that is lauded elsewhere in its Brief.  Plaintiff had been entitled by statute to be advised in writing of <u>every</u> basis for the termination decision and afforded a full and fair opportunity to contest each one.  *38 U.S.C. § 7462(b)(1)(A)*.  Once the VA's own DAB concluded that only two of the charges involving Patient A could be sustained, that should have been the end of any discussions of Patients B, C, and D, as well as any "nursing concerns."  The attempt to substantiate the firing through criticisms unrelated to this single isolated episode is contrary to this Congressional mandate and should be rejected.

## II.    THE QUESTIONABLE ADMINISTRATIVE REVIEW PROCESS

Defendant VA is plainly picking-and-choosing those administrative findings that are to its liking, while stubbornly refusing to acknowledge the unavoidable implications of the remainder.  For example, Defendant continues to highlight the proceedings conducted by the Administrative Investigation Board ("AIB"), which had concluded that Dr. Doran "did <u>not</u> give a verbal order for Narcan" and "did amend the medical record of Patient A 'seven weeks after the incident[.]' " *Defendants' Brief, p. 22*.  But the DAB subsequently determined that the "AIB was not convened in accordance with VA Directive 0700." *Defendants' Exhibit P, R. 57-16, PageID#:1268*.  The AIB had "compromised its objectivity, and was likely to contain members

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

who had direct involvement in the matter being investigated." *Id.* The members also did not possess "sufficient knowledge of the subject matter." *Id.* And as if that was not enough, the DAB ultimately determined after hearing testimony from several witnesses that the AIB findings were "technically inaccurate" as "Dr. Doran did not amend the medical record," and there was actually "no dispute [she] was advocating for Narcan administration at that time." *Id., PageID#: 1274.* And "[o]nce anesthesia had established an airway the issue of reversal with Narcan was not relevant." *Id.* Given this emphatic denunciation by the final arbiter in the "carefully crafted" administrative review process, it is simply astounding that Defendant VA would devote so much attention to the AIB's discredited findings. *Defendants' Brief, pp. 14, 21-22.*

Perhaps the most troubling aspect of the VA's administrative review process was that it was not until the final DAB that anyone finally recognized, at least openly, that the principal witness against Plaintiff, Glen Borchers, M.D. ("Dr. Borchers"), had provided representations and assurances that "were exaggerations or misrepresentations, and were different from his statements under oath[.]" *Defendants' Exhibit P, R. 57-16, PageID#:1267.* Without openly disputing that Dr. Borchers perjured himself during the administrative effort to oust the only remaining female physician from the Gastroenterology Department, Defendant VA has offered merely a quote from the DAB report that his "answers before [it] represented truthful

Paul W. Flowers Co., LPA
Terminal Tower, 40ᵗʰ Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

answers[.]" *Defendants' Brief, p. 45* (footnote omitted) (quoting *Defendants'*
*Exhibit P, R. 57-16, PageID#:1270*). However, Defendants have succeeded
only in highlighting the schizophrenic nature of the DAB's analysis, which
engaged in repeated contradictions in a transparent effort to reach the
desired outcome. The more complete quote from the report is:

> [Dr. Borchers'] presentations before the PSB and
> MEB contained many inaccuracies (see above)
> regarding the details of Patients A, B, C, D, both when
> summarizing the events, and the outside Peer
> Reviews. We believe that his answers before the
> Board represented truthful answers.

*Defendants' Exhibit P, R. 57-16, PageID#:1270*. How the DAB members
were able to divine that Dr. Borchers had suddenly started telling the truth
remains a mystery, as no explanation was offered for why they "believe[d]"
he had finally discontinued the deception. *Id.* Once the first
misrepresentations were identified, however, any truly impartial and
conscientious arbiter would have refused to believe anything a dishonest
witness continued to state that could not be independently substantiated. *Id.*
The DAB may be entitled to some credit for acknowledging the flaws in the
termination decision that no sensible person could have excused. *Id.* But
the findings entered against Dr. Doran with respect to Patient A were based
squarely upon the discredited testimony of an untrustworthy physician who
was admittedly "the main source of information presented" during the
review process. *Id.* No weight at all should be afforded to these skewed

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

administrative proceedings, which certainly had not proceeded in the manner Congress had envisioned.

## III.   THE CONCLUSIVE MEDICAL BOARD DECISION

To be sure, any credibility that may have been due to the DAB's decision to uphold the termination decision on the basis of the Patient A incident alone was lost as soon as the Ohio State Medical Board issued its final ruling.  Oddly, Defendant VA has started calling this state agency the "Ohio Licensing Board," which is not correct.  *Defendants' Brief, pp. ii, 27-29, 38, 53-54.*  The Ohio General Assembly has established a "state medical board" whose twelve members have been appointed by the Governor and approved by the state Senate.  *R.C. § 4731.01.*  Earlier when Defendants were underscoring the ongoing investigation and potential suspension of Plaintiff's license during the District Court proceedings, the agency was more accurately identified as the "Ohio Medical Board."  *See, e.g., Defendants' Renewed Motion for Summary Judgment, pp. 4, 28, R. 57, PageID#:908, 932.*  Perhaps it is believed that by omitting the term "Medical" from the proper title, this Court can be convinced that Plaintiff was exonerated by an organization with no real expertise in such matters.  That is far from the case, as eight of the members are required by law to "be physicians and surgeons licensed to practice in Ohio" with at least seven holding "the degree of doctor of medicine." *R.C. § 4731.01.*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9393

In any event, no one should be misled by Defendants' abrupt reversal in their position regarding the significance of the Ohio State Medical Board's findings and conclusions. This Court is now being assured for the first time in these proceedings that the ruling is inconsequential because the "VA is free to hold its physicians to a standard above the minimal level necessary to avoid licensing sanctions." *Defendants' Brief, p. 53*. The obvious flaw with this retort is that the VA has yet to identify what those heightened standards were. *Id.* The decision they have cited in support of this contention involved a physician who was fully aware "that he was practicing at an academic facility" and thus understood the elevated responsibilities that were owed. *Benjamin v. Brachman*, 246 Fed. App'x. 905, 916 (6th Cir. 2007).

Given that no proof has been offered that Dr. Doran was in fact notified in advance of, and fired for failing to comply with, any such lofty expectations, reasonable jurors would be under no obligation to agree with this dubious effort to sidestep the Ohio State Medical Board's unfavorable ruling. *Id.* Significantly, the only charge involving the medical treatment furnished to Patient A that was ultimately upheld administratively by the V.A. was conspicuously labeled: "**Failure to Provide the Standard of Care**." *Defendants' Exhibit HH, R. 57-34, PageID#:1382*. There is nothing in this notice even remotely indicating that Defendants had been expecting Plaintiff to fulfill some other responsibilities beyond those that all gastroenterologists nationwide are required to satisfy. *Id.* If such a written

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9393

disclosure had been furnished as required by 38 U.S.C. § 7462(b)(1)(A), an inquiry would be necessary into whether and how the Columbus VA gastroenterologists had been warned both that they were obligated to furnish more than the accepted standard of care, and could be fired for failing to comply just once. One would certainly have to question, moreover, whether such elevated duties applied equally to male and female physicians alike.

It should not be forgotten that when Defendants were emphasizing the ongoing Ohio State Medical Board investigations in the District Court proceedings below, there was never any suggestion that a different standard of review would be applied to render the outcome irrelevant. *Doc#:57, Defendants' Renewed Motion for Summary Judgment, R. 57, PageID#:908, 932*. The Magistrate certainly did not consider that the Medical Board proceedings were purely inconsequential, as she explicitly found that they were the "result of the VA's revocation of [Plaintiff's] privileges." *Opinion and Order, R. 70, PageID#:2099*. Rather obviously, an attempt was being made at that time to convince all concerned that the mere prospect of the termination or suspension of Plaintiff's medical license somehow lent additional support to the termination decision. Having successfully convinced the lower court that the Ohio State Medical Board investigation was directly relevant to the instant claims for gender discrimination and harassment, Defendants must not be allowed to reverse positions.

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

## IV. THE FIRMLY ESTABLISHED *PRIMA FACIE* CASE OF GENDER DISCRIMINATION

### A. Plaintiff's Replacement by a Male Counterpart

As both Defendant VA and the District Court have recognized, a *prima facia* case of discrimination can be furnished through <u>either</u> the identification of a sufficient "comparator employee" who received preferential treatment <u>or</u> a demonstration that Plaintiff Dr. Doran "was replaced by someone outside the protected class[.]" *Defendants' Brief, p. 41*. While the federal agency continues to insist that she "failed to carry" her burden in this regard, that is hardly the case. *Id., p. 42*.

There is actually no dispute that the second approach has been fully satisfied. Dr. Borchers did not deny that Plaintiff Dr. Doran "was replaced by one or two males" who were identified as Drs. Lee and Weprin and "[n]o female doctors" worked in the Gastroenterology Department even at the time of his deposition on July 9, 2018. *Deposition of Glen Borchers, M.D. ("Dr. Borchers Depo."), R. 63, PageID#:1483-85, 1567*. Another female gastroenterologist had left after she was accused of over-sedating three patients and suspended. *Id., PageID#:1484-85*. According to Dr. Doran, Dr. Borchers always had issues with this physician because of her substantial prior experience in management and proposals for improving their department, which were misconstrued as criticisms of the male supervisors. *Deposition of Trisha Doran, M.D. ("Dr. Doran Depo."), R. 64, PageID#:1718*. He ultimately approved the charges of incompetence against

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

her as her supervisor. *Dr. Borchers Depo., R. 63, PageID#:1486-87.* The Gastroenterology Department remains today an all-male team under Dr. Borchers' leadership.[1] The record is thus <u>uncontested</u> that both female gastroenterologists were replaced by non-protected male counterparts.

Indeed, during his deposition in 2018, Dr. Borchers represented that there had "been a lot of turnover" in the Gastroenterology Department. *Dr. Borchers Depo., R. 63, PageID#:1568.* By all appearances, however, <u>not one</u> female physician was ever hired after he was elevated to Chief and finished his probationary period roughly seven years ago. No employer should ever be allowed to utilize "a lot of turnover" as a smokescreen for the elimination of an entire protected class of employees from the workplace.

This Court has long recognized that a female employee may satisfy the final prong of the *prima facia* case with evidence "she was replaced by a person outside the protected class." *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003), citing *Kline v. Tennessee Valley Auth*., 128 F.3d 337, 349 (6th Cir. 1997). Since <u>all</u> the gastroenterologists in the Department have consistently been men for the last five years following Dr. Doran's firing, it hardly matters exactly who filled the position. The Magistrate's fixation with

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

---

[1] *Compare Plaintiff's Exhibit M, R. 68-1, PageID#:2090* (identifying the physicians in the department in 2013-14), *with* https://www.columbus.va.gov/services/Gastroenterology.asp (Columbus VA website presently indicating that all the physicians in the department are men and both the nurse practitioners are women). Notably, Defendants have not denied that this Court is entitled to take judicial notice of relevant information provided on its own website. *Plaintiff's Brief, p. 24 n.2.*

William H. Emlich, Jr. ("Dr. Emlich") was thus pointless, and the determination that Plaintiff had failed to demonstrate that she was replaced by a male counterpart is simply wrong. *Opinion and Order, R. 70, PageID#:2108-09.* Whoever is now performing the work that had once been Dr. Doran's duties, he is without question a man.

## B.    The Misplaced Counterpart Requirement

Following the immaterial discussion of whether Dr. Emlich had in fact filled Dr. Doran's shoes in the wake of her termination, the Magistrate proceeded to meld together the alternative approaches for establishing a *prima facia* case by requiring proof he was a "valid comparator[.]" *Opinion and Order, R. 70, PageID#:2109.* An obvious error was thus committed as a matter of law, since replacement by a non-protected employee alone is sufficient to establish the final requirement for a *prima facia* case. *Carter*, 349 F.3d at 273.

Precisely the same mistake had been committed in *Vincent v. Brewer Co.*, 514 F.3d 489, 495 (6th Cir. 2007), where the District Court granted summary judgment upon a gender discrimination claim after finding that the plaintiff "could not establish a prima facie case of gender discrimination because she could not show that she was as qualified for her position as her male replacement." *Id.* at 491. In reversing this ruling, the unanimous Sixth Circuit observed that the plaintiff is only required to demonstrate under the third prong that there is at least a legitimate factual dispute over whether she

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9393

"was qualified for her position." *Id.* at 495. The notion that she must further prove under the fourth prong that she and her male replacement were comparable was emphatically rejected:

> [The female plaintiff] need not, as [the employer] now contends, also show that [her male replacement] was similarly qualified. Such a requirement would inappropriately increase the showing that a plaintiff must make in order to establish a prima facie case. This court has repeatedly stated that the fourth element requires a plaintiff to show only that she "was replaced by a person outside the protected class." *See, e.g., Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir.2007); *Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir.2004); *Peltier*, 388 F.3d at 987; *Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 731 (6th Cir.2000); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992). Nowhere does this oft repeated standard suggest that a plaintiff and her replacement must be similarly qualified.

*Id.* at 495.

Turning to the case *sub judice*, Defendant VA never explicitly sought summary judgment upon the first three elements of the *prima facia* case, and argued only in this regard that: "Dr. Doran cannot establish a prima facie claim of sex discrimination because she cannot show that any similarly situated employee outside her protected class [was] treated more favorably." *Defendants' S.J. Motion, R. 57, PageID#:940.* As *Vincent*, 514 Fed.3d 489, instructs, that is simply the wrong standard. The District Court proceeded to correctly recognize that: "Only the fourth element is in dispute here[.]" *Opinion and Order, R. 70, PageID#:2196.* But when Defendant V.A.'s

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

unprecedented new standard was adopted and applied to require more than just replacement by a non-protected employee, the Sixth Circuit precedent was indisputably violated. *Vincent*, 514 Fed.3d at 495.

## C. The Actual Comparable Employee Test

Even if it were somehow impossible for Plaintiff Dr. Doran to establish a legitimate factual dispute over whether she was replaced by a male physician in the all-male Gastroenterology Department, the fourth prong of the *prima facia* case can still be satisfied with proof she was treated differently than a similarly situated non-protected employee. *Hall v. Ledex, Inc.*, 669 F.2d 397, 399 (6th Cir. 1982); *Robinette v. Promedica Pathology Labs.*, No. 20-3338, 2021 WL 1158181, *2 (6th Cir. Jan. 5, 2021). Defendant VA has seriously exaggerated the burden imposed to meet this alternative approach with the assertion: "To establish that similarly situated employees were treated more favorably, an employee must first identify a comparator who is 'similarly-situated *in all respects*.' " *Defendants' Brief, p. 42* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Such an unrealistic standard would virtually guarantee that no victim of employment discrimination and harassment will ever be able to prevail in a court of law, no matter how deserving. Some sort of distinction can always be drawn between those who are ousted from their positions as a result of their protected status, and those non-protected employees who remain on the payroll.

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9393

This Court has more recently expressed disagreement with the way that Defendant twisted the quote from *Mitchell*—a tactic that has been utilized before by other employers:

> We explained in *Mitchell* that when the plaintiff lacks direct evidence of discrimination, "the plaintiff must show that the 'comparables' are similarly-situated in all respects," absent other circumstantial or statistical evidence supporting an inference of discrimination. *Id.* at 583. Although this statement appears to invite a comparison between the employment status of the plaintiff and other employees in every single aspect of their employment, *Mitchell* has not been so narrowly construed. In *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir.1994), this court explained that the plaintiff was simply "required to prove that all of the *relevant* aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation." *Id.* at 802 (emphasis added)[.]

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). While the "specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances," a court "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id.* To this end, a "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather, as this court has held in *Pierce*, the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.' " *Id.* (quoting *Pierce*,

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

40 F.3d at 802).   Moreover, a "plaintiff 'is not required to show that his proposed comparator's actions were identical to his own.' " *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) (quoting *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 459 (6th Cir. 2010)); *see also, Moore v. Univ. of Memphis*, No. 10-2933, 2013 WL 6550434, *12 (W.D. Tenn. Aug. 16, 2013) ("Strengths and weaknesses of the comparators do not necessarily have to be in the same areas for the plaintiff to satisfy the fourth prong of the *prima facie* case.").

Here, sensible jurors could conclude that it is enough that, in stark contrast to Dr. Doran, no male physician has ever been terminated from the VA medical system on the basis of a single alleged episode of mismanaged patient care.   To this day, Defendants have remained unable to identify just one such example throughout the history of the federal program.   The best they have been able to do is accuse Plaintiff of "misrepresenting the factual record" which purportedly "shows that the VA *did* take 'major adverse actions for similar acts of misconduct.' " *Defendants' Brief, p. 12, citing Defendants' Exhibit P, R. 57-16, PageID#:1278.*   But all they are citing in this regard is the DAB's unexplained, unsupported one-sentence declaration: "Other physicians at the facility have received major adverse actions for similar acts of misconduct."   *Id.*   Not only does this conclusory assertion possess no evidentiary value of any kind in this Court, but the DAB did not actually confirm that any of these unidentified physicians were in fact men

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 9395

and had in fact been fired for a one-time infraction.

And if it is indeed necessary for an employment discrimination claimant to specifically identify a "comparator" by name, this Court need look no further than Scott J. McKeon, M.D. ("Dr. McKeon"). As detailed earlier in this appeal, this male physician had arrived immediately after the Code Blue was called, understood that Narcan was being prepared for Patient A as Dr. Doran had instructed, and quickly countermanded her order. *Plaintiff's Brief, pp. 6-7.* Even the VA's DAB recognized that: "There is no dispute that Dr. Doran was advocating for Narcan administration at that time." *Defendants' Exhibit P, R. 57-16, PageID#: 1274.* The VA's own written policy required "rescuing patients who slip into deep sedation." *Defendants' Exhibit S, R. 57-19, PageID#: 1295.* Given that the VA's heaviest criticisms of Plaintiff's response to Patient A's sedation reaction had centered upon her supposed failure to administer the reversal agent, it should have come as no surprise that she has cited the total lack of any disciplinary action against Dr. McKeon as an example of disparate treatment. *Id., p. 23.* Yet in response, Defendants have declined to confront these realities, and have offered only a passing reference to the male physician. *Defendants' Brief, p. 13.* This silence speaks volumes.

Apart from Dr. McKeon, disturbing evidence of disparate treatment can be found in Defendants' continued inability to explain why Dr. Borchers never received even the slightest reprimand for his indisputable

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40ᵗʰ Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9393

"exaggerations or misrepresentations" and other accounts that were "different from his statements under oath[.]." *Defendants' Exhibit P, R. 57-16, PageID#:1267; Dr. Borchers Depo., R. 63, PageID#:1530, 1533-34.* This tacit endorsement of his deception during disciplinary proceedings is especially ironic given that Dr. Doran had been charged with a lengthy count of "Lack of Candor" that was never substantiated. *Defendants' Exhibit HH, R. 57-34, PageID#: 1383.* Defendant VA's continued devotion to the dishonest Department Chief is particularly baffling now that it is apparent that his ill-conceived campaign against the last remaining female gastroenterologist led to the monetary settlement that was needlessly paid to Patient A. *Defendants' Brief p. 15.* Several independent experts had confirmed that Dr. Doran's response to the unexpected sedation reaction had fully complied with the standard of care, most notably one the VA's own most highly qualified Gastroenterologists, Sangreeta Agrawal, M.D. *Plaintiff's Supplement, Exhibits B-G, R. 68-1, PageID#:2041-81.* And this Court should have no doubts that Dr. Doran had competently handled the emergency situation once the Ohio State Medical Board ruled. *Plaintiff-Appellant's Motion to Supplement and Modify Record filed May 18, 2021 ("Plaintiff's Supp. Mtn.), 6th Cir. Doc#:24-1, Exhibit 2.* A jury may well be deeply troubled that a federal agency would so quickly resolve an entirely defensible malpractice claim and completely abandon a dedicated female physician in the process.

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

Recognizing that the VA's treatment of these two gastroenterologists could not be more drastically dissimilar, Defendants have asserted that "Dr. Borchers, as her supervisor, cannot be viewed as similarly situated" to Dr. Doran. *Opinion and Order, R. 70, PageID#:2106-2108*; *Defendants' Brief, pp. 41-45.* But Dr. Borchers worked right alongside Dr. Doran with the same patient responsibilities. Both gastroenterologists were ultimately supervised by the Chief of Staff, Dr. Mark Cooperman ("Dr. Cooperman"), who was primarily responsible for proposing discipline, and each of these doctors was subject to the same administrative review processes. *Dr. Borchers Depo., R. 63, PageID#:1530.* Where a discrimination suit is premised upon disparate treatment of those in a regulated profession, like the physicians at issue here, the focus should rest upon the standards of practice within that profession. Under the circumstances, reasonable jurors could find that Dr. Doran and Dr. Borchers were similarly situated because they " 'have been subject to the same standards' " as GI physicians working for the V.A. and "'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Ercegovich*, 154 F.3d at 352 (quoting *Mitchell*, 964 F.2d at 583).

Of course, it should matter that Dr. Borchers <u>was</u> Dr. Doran's direct supervisor, but not for the reasons Defendants think. Title VII would fail to remedy substantial injustices if a *prima facia* gender discrimination claim cannot be established by proof that a female subordinate who engaged in the

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

same regulated conduct as her male supervisor was punished for failing to meet an unfairly heightened standard that her supervisor was never required to meet.

This Court should hold that viewing the facts in the light most favorable to non-movant Dr. Doran, the relevant comparative factors place Dr. Borchers and Dr. Doran on equal footing. And it should also be recognized that these physicians were treated differently for the same conduct, which did not justify termination for either physician.

## V.   THE FACTUAL DISPUTE OVER PRETEXT

While Defendants believe that Dr. Doran is attempting "to invert the *McDonnell Douglas* framework" and shift away the burden of demonstrating pretext, this whole criticism is thoroughly detached from the governing legal standards. *Defendants' Brief, pp. 46-47.* It must be remembered that "at the summary judgment stage of litigation, courts should not allow 'th[is] burden-shifting analysis [to] obfuscate the appropriate question—whether there exists a genuine issue of material fact.'" *Jackson*, 814 F.3d at 777 (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011)). Because the burden within summary judgment proceedings is always one of "production," a plaintiff "must produce sufficient evidence from which a jury could reasonably reject [an employer's] explanation of why it fired her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Yet this duty to produce evidence does not stay with the plaintiff:

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

> "Once the plaintiff establishes [her] *prima facie* case, <u>the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action</u>." *White*, 533 F.3d at 391. "This is a burden of production; although '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons,' it must raise 'a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Cline*, 206 F.3d at 666 (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089); *see also Burdine*, 450 U.S. at 256, 101 S.Ct. 1089 ("the employer's burden is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'").

*Jackson*, 814 F.3d at 778-79 (emphasis added); *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.").

As the summary judgment movant, Defendants must therefore do more than simply "state [their] reason" for terminating Dr. Doran. *Defendants' Brief, p. 48.* Supporting evidence is required to prove a non-discriminatory reason, and even once it has been provided, Dr. Doran may easily rebut that evidence through one or more of several approaches:

> Generally speaking, an employee can show that an employer's explanation was pretextual in "three interrelated ways": "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id.* at 895 (quoting *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012)). "However, <u>the [employee] may also demonstrate</u>

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

> pretext by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008)). And, of course, we must always keep in mind that, at summary judgment, the employee "need not prove that the [employer's] proffered rationale is pretextual, as that would be enough proof for summary judgment in favor of the [employee]." *Whitfield v. Tennessee*, 639 F.3d 253, 260 (6th Cir. 2011). Rather, the employee "must prove only enough to create a genuine issue as to whether the rationale is pretextual." *Id.*

*Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 (6th Cir. 2019) (emphasis added); *see also, Moore*, 2013 WL 6550434, *10. While the ultimate question remains whether unlawful discrimination can be discerned, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

Importantly, the standard of production is no more demanding at the pretext phase than it is at the initial stage requiring some evidence supporting a *prima facie* claim. *Jackson*, 814 F.3d at 780. Dr. Doran does not have to "prove" anything at this point, contrary to Defendants' argument. *Defendants' Brief, p. 46.* The burden here is " 'not heavy' " as summary judgment for the Defendant " 'is warranted only if no reasonable juror could

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

conclude that the employer's offered reason was pretextual.' " *Strickland v. City of Detroit*, 995 F.3d 495, 512 (6th Cir. 2021) (quoting *George v. Youngstown State Univ.*, 966 F.3d 446, 462 (6th Cir. 2020)).

Most of Defendants' argumentation on this point begins from the flawed premise that Dr. Doran has offered only a "bare assertion" that her firing was pretextual. *Defendants' Brief, pp. 47-49.* Nothing could be further from the truth, as Defendant V.A.'s own DAB found that the majority of the initial grounds for termination could <u>not</u> be substantiated. *Defendants' Exhibit P, R. 57-16, PageID#:1270-1278.* And then the final and most esteemed arbiter, the Ohio State Medical Board, rejected those that had passed the suspect administrative review process. *Plaintiff's Supp. Mtn., Exhibit 1.* And that outcome had been relatively predicable given the overwhelming support that had been furnished to Dr. Doran from independent evaluators. *Plaintiff's Supplement, Exhibits B-G, R. 68-1, PageID#:2041-81.* Ample evidence thus permits a finding that the original grounds for the firing were purely pretextual.

Defendant V.A. nevertheless asserts that its " 'honest belief' " in the validity of its reasons for terminating Dr. Doran cannot be overcome. *Defendants' Brief, pp. 49-50* (quoting *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d at 322-23). In reality, the "honest belief" of an employer warrants summary judgment only when no evidence of pretext is submitted by a plaintiff. *Babb*, 942 F.3d at 322-23. Once there are legitimate reasons

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9393

to "doubt" the proffered explanation for the adverse employment action against the protected employee, a trial is necessary. *Lott v. ICS Merrill*, 483 F. App'x 214, 219 (6th Cir. 2012) (reversing summary judgment in favor of defendant where plaintiff "satisfied his burden of producing sufficient evidence with which a jury could doubt [defendant's] honest belief in its explanation for [plaintiff's] termination.). Because <u>all</u> of the original grounds for Plaintiff's firing have been thoroughly debunked through eminently qualified sources unaffiliated with Defendant V.A., the "honest belief" defense is at best a jury question in this case.

## VI. THE PROPERLY SUBSTANTIATED RETALIATION CLAIM

### A. The True Extent of the Protected Activities

Defendants have apparently failed to grasp the full breadth of Plaintiff Dr. Doran's Title VII retaliation claim. She had not voiced to her superiors merely that a male physician was receiving EDRP benefits that she had been promised at hiring. *Defendants' Brief, pp. 60-65.* She also complained to the VA about the content of her proficiency reports, which cast her hard work and long hours as inefficient, although men in a similar position had been commended for their work ethic and drive. *Dr. Doran Depo., R. 64, PageID#:1714, 1719, 1725-27, 1736-47, 1812-14; Plaintiff's Brief, p. 29.* And she expressed her dismay as well with Dr. Borchers' preferential treatment of the men in the Department, particularly with regard to the suddenly negative Proficiency Reports she started to receive before the disciplinary

Paul W. Flowers Co., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

proceedings were commenced. *Dr. Doran Depo., R. 64, PageID#: 1810-14.*
These complaints were specifically directed to her superiors, including Drs.
Cooperman and Shadam. *Id., PageID#: 1750, 1814.* But her grievances
were ignored by all. *Id., PageID#:1747-51.* The fact that the official
recommendation to discipline Dr. Doran was issued on the same day that
she submitted her appeal of her 2014 Proficiency Report creates a strong
inference in support of this additional aspect of the claim. *See Robinette,*
2021 WL 1158181, *2 (reversing dismissal of retaliation claim where
employee was allegedly terminated shortly after lodging complaints of
employment conditions and treatment).

## B. The Evolving Standard of Causation

Defendants' only arguments as to the substance of Dr. Doran's Title VII
retaliation claim are that she "did not engage in protected activity, nor was
any such activity the cause of her termination." *Defendants' Brief, p. 60.* On
this first point, it is claimed that "nowhere did Dr. Doran testify that she
made these reports" of disparate treatment "to anyone in terms of
discrimination." *Id., p. 61.* This is at least disingenuous, as the questions
posed to Dr. Doran at her deposition were phrased in terms of
discrimination, protected activity, and retaliation. *Dr. Doran Depo., R. 64,
PageID#:1705-1708, 1810-1812.* This is not an instance like the one noted
by Defendants in *Webb v. R & B Holding Co.*, 992 F.Supp. 1382, 1389 (S.D.
Fla. 1998), where a plaintiff had only complained that others in her

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

workplace were speaking Spanish. It mattered in that instance that "Title VII prohibits employers from denying employees the right to speak Spanish," so it was "unlikely that Defendant would have assumed that Plaintiff's efforts to eliminate Spanish speaking in the workplace came under the protective umbrella of Title VII." *Id.* In this case, Dr. Doran complained that a male physician was receiving Educational Debt Reduction Program ("EDRP") that she had been promised at hiring, but which were still never provided to her after she was subjected to significant bureaucratic red tape. *Dr. Doran Depo., R. 64, PageID#:1696, 1705-1708, 1810-1812.* She testified that these complaints resulted in different treatment going forward, including with credentialing and Patient A's sedation event. *Id., PageID#:1812-1813.* This testimony should be enough to permit an inference that Dr. Doran engaged in protected activity.

As for the requirement of causation, Defendant has relied exclusively on the prior rule that "retaliation claims must be proven under the but-for-causation standard." *Defendants' Brief, p. 62.* Dr. Doran had asserted to the contrary that a temporal closeness between the protected activity and adverse employment action was sufficient. *Plaintiff's Brief., p. 28.* But as briefing has proceeded in this appeal, the but-for causation standard has eroded substantially following the release of *Babb v. Wilkie*, ___ U.S. ___, 140 S.Ct. 1168, 206 L.Ed.2d 432 (2020). In that decision, the Supreme Court considered a provision of the Age Discrimination in Employment Act

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9395

("ADEA"), which states that "that 'personnel actions' affecting" federal employees "aged 40 and older 'shall be made free from any discrimination based on age.' " *Babb*, 140 S.Ct. at 1171. The High Court held that this text from the ADEA directs that "age must be the but-for cause of *differential treatment*, not that age must be a but-for cause of *the ultimate decision*" to take a personnel action. *Id*. at 1173-76.

The *Babb* decision very recently led the United States Court of Appeals for the Eleventh Circuit to reject application of the strict but-for causation standard to Title VII discrimination and relation lawsuits, and even to question application of the *McDonnell Douglas* framework to Title VII claims made on behalf of federal employees. *Malone v. United States Atty. Gen.*, No. 20-12527, 2021 WL 2134850, *4 (11th Cir. May 26, 2021); *Troupe v. DeJoy*, No. 20-12019, 2021 WL 2530188, *2 (11th Cir. June 21, 2021); *Babb v. Secy., Dept. of Veterans Affairs*, 992 F.3d 1193 (11th Cir. 2021); *Durr v. Secy., Dept. of Veterans Affairs*, 843 F. App'x 246, 247 (11th Cir. 2021); *Tonkyro v. Secy., Dept. of Veterans Affairs*, 995 F.3d 828, 833-35 (11th Cir. 2021). Just like the text of the ADEA, "the text of Title VII states that employment decisions affecting federal employees must 'be made free from any discrimination based on race,' 42 U.S.C. § 2000e-16(a) (emphasis added)." *Malone*, 2021 WL 2134850, at *4. The plain text of 42 U.S.C. § 2000e-16(a) prohibits discrimination based on sex under the same standard.

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40ᵗʰ Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9393

Given the evolution of the law in this area, this Court should recognize that Dr. Doran testified that she was treated unfairly with regard to the EDRP benefits she was promised, identifying a male doctor who was allowed to participate in the generous program without such burdensome red tape. *Dr. Doran Depo., R. 64, PageID#:1696, 1705-1708, 1810-1812.* That should be enough to meet her burden of production. If this Court is not entirely satisfied that Dr. Doran's evidence meets the evolving standard in this area, it would be appropriate to remand to the District Court to consider that question in the first instance, as was done in *Durr*, 843 F. App'x at 247-48.

## <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons offered in Plaintiff Dr. Doran's principal brief, this Court should reverse the District Court's Final Order as a matter of law and remand this action for a jury trial upon Plaintiffs' claims for damages and other relief.

Respectfully Submitted,

*s/ Paul W. Flowers*

Paul W. Flowers, Esq. (#0046625)
Louis E. Grube, Esq. (#0091337)
**PAUL W. FLOWERS CO., L.P.A.**

*Attorneys for Plaintiff-Appellant,*
*Trisha Doran, M.D.*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9393

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(a)(7)(B)(ii) and (g)(1), I certify that this Brief complies with the court's type-volume limitation and the designated sections consist of approximately 6,487 words according to the word processing software utilized.

*s/ Paul W. Flowers*
Paul W. Flowers, Esq., (#0046625)
**PAUL W. FLOWERS CO., L.P.A.**

*Attorney for Plaintiff-Appellant,*
*Trisha Doran, M.D.*

## CERTIFICATE OF SERVICE

I certify that on August 4, 2021, the foregoing **Reply Brief** was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*s/ Paul W. Flowers*
Paul W. Flowers, Esq., (#0046625)
**PAUL W. FLOWERS CO., L.P.A.**

*Attorney for Plaintiff-Appellant,*
*Trisha Doran, M.D.*

PAUL W. FLOWERS CO., LPA
Terminal Tower, 40th Floor
50 Public Sq.,
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 9393